### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHERIE GOLDSTEIN, individually and on behalf of other similarly situated individuals | : : : | CIVIL ACTION NO.: |
| Plaintiffs | : | |
| | : | |
| | : | 3:03CV100 (MRK) |
| - against - | : | |
| | : | |
| IBASE CONSULTING OF FAIRFIELD COUNTY, LLC, ET AL. | : : | |
| Defendants. | : | MAY 18, 2004 |

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE

**I.    INTRODUCTION**

Plaintiff hereby submits this Memorandum in Opposition to Defendant's Motion to

Vacate the Clause Construction Award ("Award") submitted by the Arbitrator, Joseph D.

Garrison, on March 29, 2004.  Because the Arbitrator neither exceeded his authority nor

manifestly disregarded the applicable law in rendering the Award, Defendant cannot meet its

substantial burden of proving that the Award should be vacated.  Accordingly, Defendant's

motion should be denied and the case should be remanded to the Arbitrator for further

proceedings.

**II.    FACTS**

Most of the relevant facts are set forth in Plaintiff's Brief in Support of Clause

Construction Award, a copy of which is attached as Exhibit A.  To summarize, Plaintiff was

employed by Defendant IBASE Consulting of Fairfield County, LLC as a Project Coordinator.[1]

---

[1]Plaintiff has named as Defendants five related entities: IBASE Consulting of Fairfield
County, LLC, IBASE Consulting of Hartford County, LLC, IBASE Consulting of Dallas, LLC,
IBASE Consulting of New York, LLC and IBASE Consulting of New Jersey, LLC.  While
Claimant's individual claims extend only to IBASE Consulting of Fairfield County, LLC,

Plaintiff was employed under an employment agreement, attached as Exhibit 2 to Defendant's

Memorandum.  Upon information and belief, this form employment agreement was prepared by

Defendant and was the standard contract used by Defendant when hiring employees to act as

Project Coordinator and in other, similar positions.  Indeed, Plaintiff had signed a similar

employment contract when she first was hired by Defendant in May, 2001.

The form employment contract includes an Arbitration Agreement that requires the

parties to submit "any controversy or claim arising out of or relating to this agreement or its

breach, including, but not limited to, all federal or state statutory, constitutional or common law

claims" to arbitration.  During the course of her employment, Plaintiff frequently worked more

than forty (40) hours per week.  Although she was a non-exempt employee who was paid on an

hourly basis, Plaintiff was not paid overtime wages at a rate equal to one-and-one-half times her

normal hourly rate of pay, as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA") and the Connecticut Minimum Wage Act ("CMWA"), Connecticut General Statutes

Section 31-58 *et seq*.

Plaintiff initially filed suit in this Court.  As a result of Defendant's Motion to Dismiss or,

in the alternative, Compel Arbitration, this Court ordered the case to proceed in arbitration.

Subsequently, the parties agreed that this arbitration would proceed pursuant to the American

Arbitration Association's Supplemental Rules for Class Arbitrations.  Pursuant to these rules, the

Arbitrator first issued a "Clause Construction Award," determining whether or not the case may

proceed as a class arbitration.  In his Award, attached as Exhibit 1 to Defendant's Memorandum,

---

Plaintiff's representative claims extend to all five IBASE entities.  For ease of reference, Plaintiff
shall refer to all five entities collectively as "Defendant."

the Arbitrator ruled that the Arbitration Agreement "cannot be construed as prohibiting a class or

collective action under the FLSA." Award at 4. Defendant subsequently filed its Motion to

Vacate.

### III.    STANDARD OF REVIEW

A district court's role in reviewing an arbitral award is "highly deferential; such

judgments are to be reversed only where the arbitrators have exceeded their authority or made a

finding in manifest disregard of the law." *Pike v. Freeman*, 266 F.3d 78, 86 (2d Cir. 2001).

Indeed, "[i]f there is even a *barely colorable* justification for the outcome reached, the court

must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard*

*Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997) (internal quotation marks omitted, emphasis

added). "[A]s long as the arbitrator is even arguably construing or applying the contract and

acting within the scope of his authority, that a court is convinced he committed serious error

does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v.*

*Misco, Inc*., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

The review of arbitration awards is "very limited . . . to avoid undermining the twin goals

of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."

*Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993). To make a finding

of manifest disregard, "there must be something beyond and different from a mere error in the

law or failure on the part of the arbitrators to understand or apply the law [such as] where an

arbitrator understood and correctly stated the law but proceeded to ignore it." *Pike*, 266 F.3d at

86. "[C]ourts may vacate awards only for an overt disregard of the law and not merely for an

erroneous interpretation. . . .  Moreover, the law ignored by the arbitrators must be well defined,

explicit, and clearly applicable if the award is to be vacated." *Folkways Music Publishers, Inc.*

*v. Weiss*, 989 F.2d 108, 111-12 (2d Cir.1993)  (internal quotation marks omitted).

The party seeking vacatur of an arbitration award bears the burden of proving manifest

disregard.  *See Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir.2000).  "But, even if

that party proves that the arbitrators' decision is based on a manifest error of . . . law, a court

must nevertheless confirm the award if grounds for the decision can be inferred from the facts of

the case."  *McDaniel v. Bear Stearns & Co., Inc.,* 196 F.Supp.2d 343, 351 (S.D.N.Y. 2002).

## IV.    ARGUMENT

A.    *The Arbitrator Properly Concluded That Adhesion Contracts That Require the Waiver Of The Right To Proceed As A Class Or Collective Action Are Unconscionable And Thus Unenforceable*

The Arbitrator properly construed the Arbitration Agreement as permitting a class or

collective action.  In reaching this conclusion, the Arbitrator properly relied upon "[t]hose cases

providing that it is unconscionable for a party with superior bargaining power to force a class

action prohibition on [the other party, as] exemplified by *Szetala v. Discover Bank*, 97 Cal. App.

4th 1094, 118 Cal. Rptr. 2d 862 (Cal. App. 2002), cert. denied, 537 U.S. 1226 (2003) and *Ting v.*

*AT&T*, 319 F.3d 1126 (9th Cir. 2003)."  Award at 2.  Because the Arbitrator's decision

accurately reflects and is grounded upon the reasoning of these cases, and as there is no

controlling authority to the contrary, Defendant cannot meet its heavy burden of showing that the

Arbitrator overtly disregarded well-defined, explicit and clearly applicable law.

In *Szetala*, the California Court of Appeals struck down an express class-action waiver in

an arbitration clause as unconscionable.  In doing so, the court noted "[w]hen the weaker party is

presented the [class-action waiver] clause and is told 'take it or leave it' without the opportunity

for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."

97 Cal. App. 4th at 1100, 118 Cal. Rptr. 2d at ___. Numerous other federal and state courts,

recognizing that class actions are meant to redress relatively modest claims which few plaintiffs

could afford to finance individually, likewise have found attempted prohibitions against class

actions in mandatory pre-dispute arbitration agreements unconscionable. *See, e.g., Ting*, 319

F.3d at 1150 (finding unenforceable an express prohibition of class-based arbitrations contained

in adhesion contract); *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1179 (W.D.

Wash. 2002) (class arbitration ban contained in form contract by party with superior bargaining

power is unconscionable under Washington law because "the prohibition of class actions is

likely to bar actions involving practices applicable to all potential class members, but for which

an individual consumer has so little at stake that she is unlikely to pursue her claim"); *Acorn v.*

*Household Intern., Inc.*, 211 F. Supp 2d 1160, 1170 (N.D. Cal. 2002) (prohibition of class

action arbitration held unconscionable given unfairness to those "who might be owed a relatively

small sum of money," and because "it serves as a disincentive for [defendant] to avoid the type

of conduct that might lead to class action litigation in the first place."); *Lozada v. Dale Baker*

*Oldsmobile, Inc.,* 91 F.Supp.2d 1087, 1105 (W.D.Mich. 2000) (holding unconscionable

arbitration agreement contained in adhesion contract that precluded class action relief); *State ex*

*rel. Dunlap v. Berger*, 567 S.E.2d 265, 279-80 (W. Va. 2002) (same result under West Virginia

law).

     Defendant argues that the Arbitrator's ruling is incorrect, in part, because the Arbitrator

"cites only cases that apply on (sic) the California state standard." Defendant's Memorandum at

10. Defendant then goes further, and cites to *New York Telephone Co. v. Communication*

*Workers of America*, 256 F.3d 89, 92-93 (2d Cir. 2001) for the proposition that an arbitrator

cannot apply the law of another jurisdiction when there is controlling authority on point. *Id.*

This argument is both factually and legally incorrect.  First, Defendant fails to note that the

Arbitrator did not rely solely on the law of California.  The Arbitrator specifically referenced the

cases cited in *Szetala* and *Ting*, which include cases applying the laws of Washington and

Nevada.  *Ting*, 319 F.3d at 1150.  Further, contrary to Defendant's implication, California is not

alone in recognizing the potentially unconscionable effects of a class action prohibition in an

adhesive arbitration setting.  *See, e.g., Powertel, Inc. v. Bexley*, 743 So.2d 570, 576 (Fla. Dist.

Ct. App. 1999) (declaring cellular telephone service provider's arbitration clause unconscionable

based in part on its prohibition of consumer class actions); *Luna*, 236 F. Supp. 2d at 1179;

*Lozada*, 91 F. Supp.2d at 1104-05; *see also Dickler v. Shearson Lehman Hutton, Inc.*., 408 Pa.

Super. 286, 300,596 A.2d 860, 867 (1991), appeal denied 532 Pa. 663, 616 A.2d 984 (1992)

("Compelling individual arbitration would force individuals already straightjacketed by an

industry-wide practice of arbitration to fight alleged improprieties at an exorbitant cost.

Individual arbitration would be small deterrent to companies certain that few proceedings will be

instituted against them.").

More importantly, however, Defendant claims that the Arbitrator ignored controlling

authority without itself ever identifying any such authority.  Defendant argues that this case is

"strikingly similar" to *New York Telephone* because the Arbitrator was "aware of the law in this

Circuit, but deliberately chose to ignore it and apply another rule."  Defendant's Memorandum at

10.  Conspicuous in this argument, however, is *the complete lack of any citation to Connecticut*

*or Second Circuit law contrary to the arbitrator's ruling*.  In fact, there is no "controlling

authority on point" decided by any Connecticut court or by the Second Circuit.  Rather,

Defendant itself is relying upon cases from the Seventh Circuit, the Central District of

California, the Southern District of New York and the District of Minnesota.  Defendant's

Memorandum at 8-9.

The Arbitrator properly followed this line of cases in interpreting the Arbitration

Agreement as permitting collective or class actions.  Whether or not Defendant agrees with this

interpretation, the Arbitrator properly applied the law to the Arbitration Agreement, and

Defendant cannot meet his heavy burden of showing a manifest and overt disregard for well-

defined, explicit and clearly applicable law.  Accordingly, Defendant's Motion to Vacate should

be denied and the case should be remanded to the Arbitrator.

B.     *The Arbitrator Properly Ruled That Employers Cannot Require Employees To Waive Their Statutory Right To A Collective Action Under The FLSA*

As set forth by Plaintiff in her brief to the Arbitrator, Exhibit A, the collective action

provision embodied in Section 216(b) of the FLSA is an integral statutory right that cannot

implicitly be abridged by contract.  The substantive, remedial, and damages provisions of the

FLSA are part of an integrated whole, and nothing in the Arbitration Agreement limits its scope

to discrete portions of the FLSA, or waives employees' statutory right to proceed collectively.

In drafting the Arbitration Agreement, Defendant mandated "that any controversy or claim

arising out of or relating to this agreement or its breach, *including, but not limited to, all federal*

*or state statutory, constitutional or common law claims*" shall be submitted to arbitration.

(Emphasis added).  This broad language plainly includes collective claims under Section 216(b)

of the FLSA.  The Arbitrator properly determined that to hold otherwise would render the

Arbitration Agreement unconscionable, and thus unenforceable.

7

As stated in *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir.

2000):

> [E]ven if arbitration is generally a suitable forum for resolving a particular
> statutory claim, the specific arbitral forum provided under an arbitration
> agreement must nevertheless allow for the effective vindication of that claim.
> Otherwise, arbitration of the claim conflicts with the statute's purpose of both
> providing individual relief and generally deterring unlawful conduct through the
> enforcement of its provisions.

The Arbitrator properly concluded that "[t]he public policy behind the FLSA, as stated in

*Barrentine* [*v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437 (1981)], cannot

be waived by employees because the contract is silent."  Award at 3.  To conclude otherwise

would run afoul of the requirement set forth in *Gilmer v. Interstate/Johnson Lane Corp.*, 500

U.S. 20, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) that an arbitration agreement cannot force

a party to waive substantive statutory rights.  "By agreeing to arbitrate a statutory claim, a party

does not forego the substantive rights afforded by the statute; it only submits to their resolution

in an arbitral, rather than a judicial, forum."  *Gilmer*, 500 U.S. at 28, 111 S.Ct. at 1652 (quoting

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346,

3354, 87 L.Ed.2d 44 (1985)).  "So long as the prospective litigant effectively may vindicate [his

or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its

remedial and deterrent function."  *Id.*, 500 U.S. at 28, 111 S.Ct. at 1653 (*quoting Mitsubishi*,

473 U.S. at 637, 105 S.Ct. at 3359).

The FLSA embodies a Congressional intent to "give specific minimum protections" to

employees.  *Barrentine*, 450 U.S. at 739, 101 S.Ct. 1437 (1981).  Its maximum hours and

overtime provisions, "like the other portions of the Fair Labor Standards Act, are remedial and

humanitarian in purpose.  Such a statute must not be interpreted or applied in a narrow, grudging

manner." ***Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al.***, 321 U.S. 590, 597, 64 S.Ct. 698 (1944).  In order to effectuate this Congressional intent that all non-exempt employees should be paid overtime compensation, the FLSA includes a statutory right to proceed with a collective action to recover unpaid overtime wages, not only on behalf of the individual claimant, but also on behalf of all other, similarly situated, employees.  *See* 29 U.S.C. § 216(b).

Because the Arbitrator correctly concluded that the public policy behind the overtime provisions of the FLSA, as expressed in ***Barrentine***, cannot be waived, his determination that collective actions under the FLSA are not prohibited by the Arbitration Agreement must be accorded the substantial deference to which his Award is entitled.  Accordingly, Defendant's Motion to Vacate should be denied and the case should be remanded to the Arbitrator for further proceedings.

> C.     *The Cases Relied Upon By Defendant To Support The Contention That Class-Wide Arbitration Cannot Proceed Unless Expressly Authorized By The Agreement Implicitly Were Over-Ruled By **Green Tree Financial Corp. v. Bazzle***

Defendant argued before the Arbitrator, and again before this Court, that "federal case law requires that where an arbitration clause is silent regarding the issue of class-wide arbitration it is improper for a court to order class arbitration" (Defendant's Memorandum at 8), relying primarily upon ***Champ v. Siegel Trading Co., Inc.***, 55 F.3d 269 (7th Cir. 1995).  This argument, however, ignores the express ruling and effect of ***Green Tree Financial Corp. v. Bazzle***, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) ("***Bazzle***").  In ***Bazzle***, the United States Supreme Court held that, where an arbitration agreement does not expressly preclude class

actions, the arbitrator, rather than the court, is the proper entity to decide whether class actions are permitted.  539 U.S. at ___, 123 S.Ct. at 2407.

All of the cases cited by Defendant in support of this proposition, including *Champ, supra*, *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097 (C.D.Cal. 2002); *Gray v. Conseco, Inc.*, 2001 WL 1081347 (C.D.Cal. 2001); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 664 (S.D.N.Y. 1997); and *Grammaro v. Thorp Consumer Disc. Co.*, 828 F.Supp. 673 (D.Minn. 1993), are pre-*Bazzle* cases.  Regardless of the validity of this line of cases before *Bazzle*, the proposition that section 4 of the Federal Arbitration Act precludes class arbitration unless expressly authorized in the arbitration agreement no longer can be sustained following the Supreme Court's decision in *Bazzle*.

There is no question that the arbitration agreement in *Bazzle* did not expressly authorize class or collective actions; either it was silent on the issue, as the South Carolina Supreme Court determined,[2] or it prohibited class actions outright, as Green Tree argued.[3]  If, as Defendant claims, the FAA precludes collective or class arbitrations unless "expressly authorized," the Supreme Court would not have held that arbitrators are empowered to decide whether an arbitration can proceed as a class action.  Rather, the Supreme Court simply would have implemented the *Champ* Doctrine, ruled that the FAA prohibits class-wide relief unless explicitly authorized in the contract, and dismissed the case outright without remand.

---

[2]  "As a preliminary matter, we find Green Tree's arbitration clause was *silent* regarding class-wide arbitration."  *Bazzle v. Green Tree Financial Corp.*, 351 S.C. 244, 264, 569 S.E.2d 349, 359 (2002) (*Bazzle I*) (emphasis in original).

[3]  "Green Tree argued [in the South Carolina Supreme Court], as it argues here, that the contracts are not silent – that they forbid class actions."  *Bazzle*, 539 U.S. at ___, 123 S.Ct. at 2406.

10

By holding that the arbitrator, rather than the court, is the appropriate entity to determine whether class arbitration is permitted when the contract is silent on the issue, the Supreme Court of necessity rejected the *Champ* Doctrine. While noting that the Supreme Court has yet to say so explicitly, the California Appellate Court stated in *Garcia v. DirecTV, Inc.*, 115 Cal. App. 4th 297, 9 Cal. Rptr. 3d 190 (2004), that "[i]mplicit in *Bazzle* is the notion that, absent a class action waiver, classwide arbitration is proper under the FAA. . . ." 115 Cal. App. 4th at 304 n. 4, 9 Cal.Rptr.3d at 196 n. 4. If, in fact, Section 4 of the FAA precludes class or collective arbitrations without an express authorization, then neither the court nor the arbitrator in *Bazzle* properly could make that determination.

The Supreme Court granted certiorari in *Bazzle* expressly "to determine whether [the South Carolina Supreme Court's] holding is consistent with the Federal Arbitration Act," *Bazzle*, 539 U.S. at ___, 123 S. Ct. at 2404, and then proceeded effectively to overturn the line of cases represented by *Champ*. *Bazzle* thus dispatched the principal legal argument upon which Defendant has relied, both before the Arbitrator and before this Court. Even if the *Champ* Doctrine had not been undermined by the Court's decision in *Bazzle,* however, Defendants' heavy reliance on *Champ* would be misplaced. Numerous courts have rejected *Champ* Doctrine and the rationale behind it.[4] *Champ* no longer has any continuing viability, and the Arbitrator

---

[4] *See, e.g., **Bazzle I**, 351 S.C. 244, 569 S.E.2d 349 (2002); **Brennan v. Ace INA Holdings, Inc.***, 2002 WL 1804918 (E.D. Pa. 2002) (copy attached) (*Champ* distinguished; arbitrator has authority to hear motion for class certification where arbitration agreement is silent);***Blue Cross v. Superior Court***, 67 Cal.App.4th 42, 78 Cal.Rptr.2d 779 (Cal. App. 1998), cert. denied 527 U.S. 1003, 119 S.Ct. 2338, 144 L.Ed.2d 235 (1999) (in the face of contractual silence, "an order compelling classwide arbitration neither contradicts the contractual terms nor contravenes the policy behind the [FAA]."); ***Dickler v. Shearson Lehman Hutton, Inc..***, 408 Pa. Super. 286, 296-299,596 A.2d 860, 864-866 (1991), appeal denied 532 Pa. 663, 616 A.2d 984 (1992) (allowing class-wide arbitration when agreement is silent).

correctly rejected Defendant's "default rule" prohibiting class arbitrations absent express agreement.

Because the Arbitrator's rejection of the ***Champ*** doctrine is based upon the sound reasoning of the United States Supreme Court, as well as courts in, *e.g.*, California, South Carolina and Pennsylvania, the Award more than meets the "barely colorable justification" standard required for confirmation. *See **Willemijn Houdstermaatschappij, BV.**, supra*, 103 F.3d at 12. Thus, Defendant's Motion to Vacate should be denied.

        D.      *The Arbitrator's Reference To The Supplemental Rules Was Not The Primary Basis For His Award, And Does Not Constitute A Manifest Disregard For The Law*

The Arbitrator's Award was based upon his conclusions that adhesion contracts that prohibit class/collective arbitrations are unconscionable, and that prohibiting class/collective arbitrations for overtime claims violate the public policy of both the FLSA and the CMWA. *See* Award at 2-3. As the Arbitrator specifically noted, "*[e]ven if the employment contract's silence requires construction without reference to the Association's rules*, those cases which hold that contract provisions prohibiting class action treatment are unconscionable are persuasive." Award at 2 (emphasis added). Defendant's argument, that the Arbitrator improperly relied upon the existence of the AAA's Supplementary Rules for Class Arbitration as the "*primary* basis for his Clause Construction Award" (Defendant's Memorandum at 7, emphasis in original), is incorrect. While the Arbitrator did refer to the AAA Rules, he did this in the context of examining the Arbitration Agreement and the applicable AAA Rules incorporated into the Agreement, and determining that the Agreement did not specifically *prohibit* class-based arbitration. *See* Award at 2.

The ultimate basis of the Arbitrator's Award was not the existence of the Supplemental Rules; rather, his ruling was based upon his conclusions that a contract cannot silently waive class/collective action rights, that to interpret this Agreement in such a manner would render it unconscionable and thus unenforceable, and that class/collective action rights cannot be waived for overtime claims under the FLSA and CMWA.  Since these conclusions have substantial support in the law, as set forth above, Defendant cannot meet its heavy burden of showing an overt and manifest disregard of the law by the Arbitrator.  Thus, Defendant's Motion to Vacate should be denied and the case should be remanded to the Arbitrator.

V.    **CONCLUSION**

The arbitrator properly concluded that adhesion contracts requiring the waiver of the right to proceed as a class or collective action are unconscionable and thus unenforceable.  He also properly ruled that employers cannot require employees to waive their statutory right to maintain a collective action under the FLSA.  Defendant's argument that the FAA precludes class arbitration unless the contract specifically authorizes it is based upon a line of cases that have been overruled implicitly by the United States Supreme Court in *Bazzle*.  Finally, the arbitrator's reference to the Supplemental Rules was not the primary basis for his award, and does not constitute a manifest disregard for the law.  Granting the Arbitrator's decision the deference to which it is entitled, Defendant's Motion to Vacate should be denied, and the case should be remanded to the Arbitrator for further proceedings.

Plaintiffs, Sherie Goldstein, et al,

By:    _____
       Anthony J. Pantuso, III, Esq.

Hayber & Pantuso, LLC
221 Main Street, Suite 400
Hartford, CT 06106
Fed No.: ct11638
(860) 522-8888

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent, via facsimile and by U.S. mail, to the following counsel of record:

Stuart M. Katz
Cohen and Wolf , P.C.
1115 Broad Street, P.O. Box 1821
Bridgeport CT 06601-1821

William G. Madsen
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue
Suite 201
Hartford CT 06106

_____
Anthony J. Pantuso, III