UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

**SHERIE GOLDSTEIN, individually
and on behalf of other similarly
situated individuals**
                  **Plaintiff**          **Civil Action No.:**

**vs.**

**IBASE CONSULTING OF
FAIRFIELD COUNTY, LLC;
IBASE CONSULTING OF**          **3:03CV0100(MRK)**
**HARTFORD COUNTY, LLC;
IBASE CONSULTING OF
DALLAS, LLC; IBASE CONSULTING
OF NEW YORK, LLC AND IBASE
CONSULTING OF NEW JERSEY, LLC**
                  **Defendant**         **JUNE 2, 2004**
_____

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO VACATE**

      The Defendants respectfully submit this reply brief in support of their Motion to Vacate the Arbitrator's Clause Construction Award. As set forth in their principal brief, the Defendants maintain that the Arbitrator improperly disregarded the AAA Rules and the controlling case law in this Circuit regarding class actions in rendering his decision. The Plaintiff has offered no persuasive arguments to refute these points. In the absence of the language in the underlying arbitration clause that might support her position, the Plaintiff relies instead on confusion of the issues and arguments that ignore the relevant law. The Defendants respectfully request that their motion be granted.

      The Plaintiff initially filed suit in this court arising from her employment with the Defendants, seeking to assert both individual claims and to pursue a class action. After the Court compelled arbitration, the Arbitrator issued a Clause Construction Award

pursuant to the AAA Rules, permitting the Plaintiff to pursue a class action in arbitration. The Defendants filed a Motion to Vacate the Clause Construction Award on the grounds that the Arbitrator exceeded his powers and that the award was in manifest disregard of the law.

In her Opposition, the Plaintiff identifies only three bases to sustain the Arbitrator's ruling: (1) the Arbitrator's reference to the AAA Supplementary Rules was proper, and was not the primary basis for his award; (2) the decision in <u>Green Tree Financial Corp. v. Bazzle</u>, 539 U.S. 444, 123 S.Ct. 2402 (2003) overruled the prevailing line of federal authority cited by the Defendants; and 3) the policy reasons in interpreting contracts of adhesion and the FLSA support the Arbitrator's decision to depart from the law. Each of these arguments must fail.

**I.**     **ARGUMENT**

**A.**     **The Arbitrator's Reliance Upon The AAA Rules Was Improper.**

In Section IV.D. of her brief, the Plaintiff contends that "[w]hile the Arbitrator did refer to the AAA Rules, he did this in the context of examining the Arbitration Agreement and the applicable AAA Rules incorporated into the Agreement, and determining that the Agreement did not specifically prohibit class-based arbitration." <u>See</u> Pl. <u>Opp</u>. at 13. The Plaintiff ignores <u>both</u> the Arbitrator's Award and the proper application of the AAA Rules.

As noted in the Defendants' Memorandum in Support of Motion To Vacate, the AAA Rules clearly state that "[i]n construing the applicable arbitration clause, the arbitrator <u>shall not</u> consider the existence of these Supplementary Rules, or any other AAA Rules to be a factor in favor of or against permitting the arbitration to proceed on a class basis." AAA Supplementary Rule for Class Arbitrations Number 3 (emphasis

2

added.) Nevertheless, the Arbitrator's award inexplicably states at the outset that "Claimant's employment agreement calls for arbitration administered by the Association and the agreement is silent with respect to class or consolidated claims. Therefore, the Supplementary Rules for Class Arbitrations apply, and Claimant may file her claim on behalf of other employees who are similarly situated." Clause Construction Award p. 2.

In other words, the Arbitrator premised his analysis on the incorrect assumption that because the AAA Rules apply and discuss the possibility of class certification, therefore the Plaintiff must be allowed to pursue claims as a class. The Clause Construction Award thus violates the very Rule governing "Construction of the Arbitration Clause" because it expressly relied on the fact that the Rules "allow such an action" as the basis for its holding that the claimant may maintain a class arbitration. Id. Therefore, the Arbitrator did exactly the opposite of what the Rule themselves direct.

Furthermore, the Plaintiff's suggestion that this was not the Arbitrator's primary basis for his decision is disingenuous. It is difficult to conceive of a more explicit and plainly governing Rule violated in a more open and unapologetic way. Such behavior is manifest disregard of the law, and the Plaintiff's contention to the contrary is unsustainable.

**B.    The Plaintiff's Reliance Upon <u>Bazzle</u> Is Misplaced.**

In her Opposition, the Plaintiff argues that "[b]y holding that the arbitrator, rather than the court, is the appropriate entity to determine whether class arbitration is permitted when the contract is silent on the issue, the Supreme Court of necessity rejected the

Champ[1] doctrine." Pl. Opp. at 11. Such a characterization of Bazzle is flatly incorrect, and is inconsistent with the Arbitrator's own ruling.

This Court need not even reach the issue of whether Bazzle negatively impacts the holdings of prior federal Courts, as that was not the finding made by the Arbitrator. Rather, the Arbitrator stated "[a]fter [ Bazzle], the issue of whether a contract, silent about whether a claimant may maintain a class or collective action, permits such an action, is clearly for an arbitrator to decide. It is a contract construction issue." Clause Construction Award p. 1. In no way does this holding, or the Plaintiff's interpretation of it, justify Arbitrator's decision in the Clause Construction Award.

The Plaintiff improperly contends that the Bazzle decision stands for the proposition that if an arbitrator has the authority to determine whether a matter may proceed as a class action, then the claimant's ability to proceed as a class action cannot be waived, and need not be express to allow class arbitration. Such an interpretation clearly mischaracterizes the holding of Bazzle.

Even if the Arbitrator purported to rely on Bazzle pursuant to the Plaintiff's interpretation, that interpretation is flatly incorrect. The Bazzle holding made no findings regarding the substantive nature of the issues that an arbitrator may adjudicate, stating as the critical holding that 'where an arbitration does not expressly preclude class actions, the arbitrator, rather than the court, is the proper entity to decide whether class arbitrations are permitted." Pl. Opp., at 10 citing Bazzle, 123 S.Ct. at 2407. Indeed, it is notable that to the extent that the Bazzle decision addressed any substantive issues; certain language in the decision promulgated by the South Carolina Supreme Court in the underlying Bazzle case explicitly recognized that '[s]everal federal circuits have

---

[1] Champ v. Siegel Trading Co., 55 F.3d 269(7th Cir. 1995).

4

precluded class-wide arbitration when the arbitration agreement is silent based on their interpretation of Section 4 of the FAA." Bazzle v. Green Tree Financial Corp. 351 S.C. 244, 257 (S.C. 2002).

However, the issue under debate in the instant matter is not whether the Arbitrator was empowered to determine whether this matter proceeds as a class, but whether the Arbitrator manifestly disregarded the law in making his determination -- an issue to which the Bazzle holding is practically irrelevant. Bazzle only disturbed previous holdings regarding the availability of class collective arbitrations to the extent that they held that a Court, rather than an arbitrator, was the appropriate decision-maker. Because the Supreme Court expressly indicated that the analysis of the availability of class arbitrations is a matter of "contract interpretation and arbitration procedure," the pre-Bazzle body of case law remains the primary authority guiding an arbitrator's analysis of an arbitration provision. Bazzle, 123 S.Ct. at 2407.

Thus, the Plaintiff's attempted justification of the Arbitrator's decision based on her own interpretation of Bazzle is immaterial to this matter and disregards the correct and valid line of federal authority to the contrary, as well as the Arbitrator's own Award.

**C.    The Champ Doctrine Is Most Applicable And Cannot Be Ignored.**

The Plaintiff next argues that "Champ no longer has any continuing viability." Pl. Opp., at 11. However, the adoption of the Champ holding by several Circuits, including the Second Circuit, is binding, controlling, authority that the Plaintiff and Arbitrator cannot ignore.

The Defendants have already addressed the Plaintiff's misconception regarding the impact (or lack thereof) of Bazzle on the Champ holding in Section B of this Reply.

5

Addressing the substance of the Champ decision, as noted in the Defendants' Memorandum in Support of Motion to Vacate, the Champ decision stands for the proposition that '[w]hen contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial…One of those…is the possibility of pursuing a class action." Champ, 55 F.3d at 276-77. This holding was specifically upheld in the Second Circuit by Howard v. Klynveld Peat Marwick Goerderler, 977 F. Supp. 654, 665 n.7 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999), citing Champ in stating: '[a] plaintiff … who has agreed to arbitrate all claims arising out of her employment may not avoid arbitration by pursuing class claims. Such claims must be pursued in non-class arbitration." Id.

Indeed, the Arbitrator made no effort to explain his refusal to obey Champ or Howard, and instead cited to a few inapplicable state law decisions.

Therefore, despite the Plaintiff's identification of state law holdings to the contrary, and the Plaintiff's mischaracterization of Bazzle, the Champ decision remains as the basis for uncontroverted and controlling authority for the proposition that an arbitration agreement that is silent regarding class-actions does not allow for class arbitration, which the Arbitrator knew was the proper holding. Therefore, the Arbitrator's decision to the contrary is in direct opposition to controlling, federal law.

**D.    The Instant Matter Is Factually Distinguishable From The Policy Arguments Regarding FLSA And Other Class Action Claims.**

Finally, the Plaintiff latches on to the policy arguments behind the Arbitrator's construction of the FLSA and contracts of adhesion as support for sustaining the Arbitrator's award. Pl. Opp., at 4-9. However, even if the Plaintiff and the Arbitrator

feel that there is a better policy than the plainly explicit and governing law, this Award is not their opportunity to overturn the binding authority in this Circuit.

A policy that is the basis for a statute, regulation, or decision can be a useful tool in understanding and applying that authority. However, where there is controlling authority in direct contradiction to a policy argument, an arbitrator cannot use a policy argument as the basis to overrule that authority. Moreover, in the instant matter, the Arbitrator's policy arguments either utilize policies that are in direct contravention of controlling federal authority, as exemplified by Champ, or, so significantly misconstrue the underlying rules as to be inapplicable.

The Arbitrator's Clause Construction Award as construed by the Plaintiff cites cases that reference protecting employees pursuant to the FLSA. It is true that the FLSA "embodies a Congressional intent to 'give specific minimum protections' to employees," Pl. Opp., at 9 citing Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728,739 (1981), and that "[s]uch a statute must not be interpreted or applied in a narrow, grudging manner," Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al., 321 U.S. 590, 597 (1944), but that does not mean that the language of the FLSA can be improperly stretched and applied beyond its original intent.

The Plaintiff is flatly incorrect about the extent of the FLSA. There is clear authority holding that there is "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute," Adkins v. Labor Ready, Inc., 303 F.3d 496, 503 (4th Cir. 2002).

It is also noteworthy that the Plaintiff emphasizes the Arbitrator's reliance on Barrentine as appropriate authority for his decision. However, both the Plaintiff and the

7

Arbitrator failed to recognize that <u>Barrentine</u>, far from being analogous to the instant matter, is so factually dissimilar as to render it completely inapplicable. Here, the Plaintiff claims that she was unable to properly bargain for or otherwise negotiate the terms of her employment and should therefore be allowed the most generous interpretation of the arbitration clause at issue. Conversely, the court in <u>Barrentine</u> addressed the issue of an arbitration clause in the context of a collective bargaining agreement; a scenario that has an entirely different dynamic, and raises completely separate issues.

Moreover, to the extent that the policy underlying the FLSA or construing contracts of adhesion permits or encourages the use of class actions, the relevant language and intent of the FLSA and such contracts of adhesion is predicated upon protecting individuals who would not otherwise be able to afford to individually pursue litigation. <u>See, e.g. Dickler v. Shearson Lehman Hutton, Inc</u>., 408 Pa. Super. 286, 300 (1991).[2] That is simply not the situation in the instant matter.

Here, under the regulations of the FLSA, if the employee prevails, she is entitled to recover her attorneys fees. <u>McGinty v. New York</u>, 251 F.3d 84, 100 (2d Cir. 2001) ("Under the FLSA, a court may award costs and attorney's fees in addition to any judgment awarded to the plaintiff or plaintiffs."). Also, under the AAA's Rules for disputes involving employer-promulgated contracts, the <u>employer</u> bears the costs of arbitration. Therefore, there is absolutely no practical reason that the Plaintiff could not pursue individual litigation, and the policy arguments raised by the Plaintiff in support of the Arbitrator's Award are completely irrelevant.

---

[2] A copy of this decision is attached hereto as <u>Appendix A</u>.

8

Therefore, by relying almost entirely on abstract policy reasons rather than the controlling authority cited by the Defendants in their underlying briefs, the Arbitrator has improperly chosen to disregard that authority in favor of creating a new policy. Such a decision is in manifest disregard of the controlling law, goes outside the Arbitrator's role in adjudicating this issue, and cannot be saved by the Plaintiff's adoption of these policy arguments.

## II.   CONCLUSION

Because the Plaintiff fails to raise any valid arguments in her Opposition that could sustain the Arbitrator's Clause Construction Award, Defendants respectfully request that this Court grant their Motion to Vacate.

THE DEFENDANTS


By:_____
   Stuart M. Katz, Esq.
   Federal Bar No. ct 12088
   A. Rachel Rothman, Esq.
   Federal Bar No. ct 23837
   Cohen and Wolf, P.C.
   1115 Broad Street
   Bridgeport, CT 06604
   (203) 368-0211
   (203) 394-9901 fax
   skatz@cohenandwolf.com

## **CERTIFICATION**

       This is to certify that a copy of the foregoing was mailed postage prepaid this 2nd day of June, 2004 to:

Anthony Pantuso, Esq.
Richard Hayber, Esq.
Hayber & Pantuso, LLC
221 Main Street
Suite 400
Hartford, CT 06106

William G. Madsen, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capital Avenue
Suite 201
Hartford, CT 06106

                                                                                              _____

                                                                                            Stuart M. Katz